UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
                                                                :
FRANCIS GAVIN, JR.,                                             :
                                                                :       **OPINION & ORDER**
                        Plaintiff,                              :
                                                                :
                -against-                                       :       19-cv-5843 (KHP)
                                                                :
COMMISSIONER OF SOCIAL SECURITY,                               :
                                                                :
                        Defendant.                              :
                                                                :
----------------------------------------------------------------X

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 8/31/2020

        Plaintiff Francis Gavin Jr., represented by counsel, commenced this action against

Defendant Commissioner of the Social Security Administration (the "Commissioner"), pursuant

to the Social Security Act (the "Act"), 42 U.S.C. § 405(g), seeking review of the Commissioner's

decision that Plaintiff was not disabled under Sections 216(i) and 223(d) of the Act from March

17, 2017—Plaintiff's alleged disability onset date—through January 30, 2019, the date of the

Administrative Law Judge's ("ALJ") decision.

        The parties submitted a joint stipulation in lieu of cross-motions for judgment on the

pleadings (ECF No. 12; hereinafter, the "J.S."), pursuant to the Court's Order at ECF No. 9.

Plaintiff appeals the ALJ's decision concerning: (1) whether the ALJ's consideration of the

opinion evidence was sufficient to support his decision with substantial evidence, including the

residual functional capacity and his determination that there are jobs that Plaintiff can perform

notwithstanding his physical limitations; and (2) whether the ALJ adequately assessed Plaintiff's

subjective complaints.  For the reasons set forth below, the Commissioner's motion is

GRANTED, and Plaintiff's motion is DENIED.

**Background**

Plaintiff was born on September 13, 1967 and currently is 52 years old.  (Administrative

Record ("R.") 30.)  He obtained a bachelor's degree in 2012.  (R. 31, 171.)  Plaintiff served in the

United States military, working 22 years in the reserves after completing a few deployments in

the Middle East.  (R. 33, 171.)  From July 2002 to March 2017 Plaintiff primarily worked as a

detective for the Port Authority of New York and New Jersey until he stopped working on

March 17, 2017. (R. 31, 171.)  On that date, Plaintiff slipped and fell on ice, sustaining injuries to

his lower back and left shoulder.  (R. 31-32.)  As a result of the March 2017 accident, Plaintiff

underwent a total left shoulder replacement on November 1, 2017. (R. 32.)  Additionally,

Plaintiff had an unrelated back surgery – a microdiscectomy and laminectomy – in 2008 or

2009.[1]  (R. 32.)  Plaintiff alleges that he reinjured his back as a result of the March 2017

accident referenced above.  (R. 32.)

Plaintiff saw medical providers concerning his back and shoulder pain at various points

both before and after his November 2017 shoulder surgery.  Just after Plaintiff's fall, he

consulted an orthopedic surgeon, Dr. Timothy Reish.  On March 25, 2017, Dr. Reish conducted a

CT scan on Plaintiff's left shoulder and observed that Plaintiff had severe bone-on-bone

glenohumeral osteoarthritis, with mild to moderate osteoarthritic changes in the

acromioclavicular joint.  (R. 237.)  As a result, Plaintiff heeded Dr. Reish's recommendation and

underwent a total shoulder replacement in November 2017.  (R. 239-41).  Plaintiff continued to

see Dr. Reish after the November 2017 shoulder replacement.  Dr. Reish's treatment notes

---

[1] There is a discrepancy in the record – Plaintiff testified the surgery was in 2009, but other records indicate it was in 2008.

indicate that by April 2018, about five months after surgery, Plaintiff's shoulder showed

minimal pain, good strength, and an ability to elevate to 140 degrees above shoulder-level.  (R.

246.)  Nevertheless, Dr. Reish's notes reflect his opinion that Plaintiff will likely not be able to

return to work as a detective.  (R. 246.)

In March 2017, after Plaintiff's accident, Plaintiff also returned to see Dr. Alfred

Steinberger, the neurosurgeon who operated on Plaintiff's back in 2009.  Following Plaintiff's

fall, Dr. Steinberger observed that Plaintiff's back pain limited Plaintiff's range of motion and

caused him constant discomfort, which was exacerbated by prolonged sitting.  (R. 254.)

Because these symptoms persisted, in September 2017 Dr. Steinbrenner recommended that

Plaintiff get an MRI after healing from his impending shoulder surgery.  (R. 253.)  In March

2018, the MRI revealed multiple level disc degeneration, a right-sided disc herniation at L1-L2

central and to the right, and progressively worsening generative disc changes at L2-L3, L3-L4,

and L4-L5.  (R. 251.)  However, Plaintiff explained to Dr. Steinberger that the back pain

responded well to Advil and was less intense and more localized than it was back in September

2017.  (R. 251.)  Therefore, Dr. Steinberger recommended that Plaintiff continue to take Advil

as needed and partake in physical therapy.  (R. 256.)

Following his physician's recommendation, from June 2018 to November 2018 Plaintiff

engaged in physical therapy.  Throughout this period, Plaintiff made slow and steady progress

in terms of shoulder strength and range of motion.  For example, the physical therapy notes

indicate that by October 2018 Plaintiff was able to lift objects of up to 20 pounds above his

shoulder level, felt less crepitus in his left shoulder during overhead efforts, and was generally

capable of lifting and carrying objects up to 50 pounds.  (R. 510.)  The physical therapy notes

also reflect that, by the end of his treatment plan, Plaintiff felt only mild pain and was mildly impaired in performing light activities. (R. 524.)

Throughout the relevant time period, Plaintiff also attended three independent medical examinations in connection with his application for Workers' Compensation. On August 9, 2017, Plaintiff saw Dr. Ronald Mann, an orthopedic surgeon. Upon examining Plaintiff and reviewing his accident, treatment, and medical history, Dr. Mann found that Plaintiff could return to work as a detective contingent on a work restriction on overhead use of the left arm. (R. 372-74.) Then, on February 7, 2018 Plaintiff saw Dr. Sean Lager, another orthopedic surgeon. Based on his review of Plaintiff's medical records and the physical examination, Dr. Lager opined that Plaintiff had a 50 percent Moderate Partial Disability and that Plaintiff could return to work with a lifting restriction of ten pounds on the left-hand side. (R. 292.) And finally, on February 26, 2018 Plaintiff saw Dr. Kamran Tabaddor, a neurosurgeon. Dr. Tabaddor opined, based on the physical examination and medical records, that Plaintiff could return to work that does not require the use of his left arm, *i.e.*, desk duties. (R. 388.)

The record also contains the medical opinion of Dr. Howard Fisher from the Office of Medical Services at Plaintiff's former employer, the Port Authority of New York and New Jersey. Dr. Fisher stated that Plaintiff, in light of his injuries, is unable to perform the full duties of a Police Detective. (R. 409.)

Rounding out the relevant medical opinions of record are those of Dr. Auerbach, a State agency medical consultant and Dr. Healy, a consultative examiner. On July 10, 2018 Dr. Auerbach opined that Plaintiff's back and shoulder impairments limited him to light exertion, with occasional postural limitations, and occasional overhead reaching with his left shoulder.

4

(R. 55-56.)  Similarly, on July 5, 2018 Dr. Healy noted that Plaintiff "has moderate limitations standing, walking, climbing stairs, bending, and lifting.  He also has moderate limitations with the left upper extremity with reaching and handling and carrying objects."  (R. 326.)

### Procedural History and the ALJ's Decision

Plaintiff filed his initial claim for disability insurance benefits under the Act on May 25, 2018.  (R. 139-40.)  He asserted disability due to degenerative disc disease and herniated discs, left shoulder surgery, and back surgery.  The alleged onset date of Plaintiff's disability is March 17, 2017.  (R. 31-32.)  The Commissioner denied Plaintiff's initial application on July 20, 2018. (R. 63-67.)    Plaintiff contested the denial and filed a request for hearing on August 17, 2018, which was granted.  (R. 93, 96.)  On January 11, 2019, Plaintiff appeared and testified at a hearing conducted by ALJ Vincent M. Cascio.  (R. 27.)  Plaintiff testified that he could lift his 35-pound daughter, cook all meals for his children, get his children ready for school, drive them to and from school and after-school activities, and perform household chores, such as light cleaning, with occasional breaks.  (R. 34, 36-37.)  Plaintiff also testified that he believes he has regained about 65 percent of the use of his left shoulder as a result of physical therapy.  (R. 36.) This was mostly consistent with what he reported to his physical therapist between June 22, 2018 and November 7, 2018 that he could perform household chores, care for his children, mow his lawn, lift up to 20 pounds above shoulder-level with his left shoulder, and lift, push, and carry up to 50 pounds.  (R. 525.)

ALJ Cascio determined that Plaintiff met the insured status requirements of the Act through the end of the year 2022.  Further, the ALJ found that Plaintiff had not engaged in substantial gainful activity since March 17, 2017, the alleged onset date of Plaintiff's disability.

(R. 12.)  The ALJ found that Plaintiff had two severe impairments: degenerative disc disease of the lumbar spine with a herniated disc and osteoarthritis of the left shoulder.  (R. 12.) However, the ALJ concluded that Plaintiff did not have an impairment, or combination of impairments, that met or medically equaled the severity of a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings").  (R. 13.)  The ALJ then found that Plaintiff retained the residual functional capacity ("RFC") – the maximum work Plaintiff could do despite his limitations – to perform light work; to occasionally balance, stoop, crouch, reach overhead with the left upper extremity, and climb ramps and stairs; but to never crawl or climb ladders, ropes, or scaffolds.  (R. 13-14.)  As such, the ALJ determined that Plaintiff was capable of performing his past relevant work as a detective and that such work does not require the performance of work-related activities precluded by Plaintiff's RFC.  (R. 18.)  Alternatively, to the extent Plaintiff's employer did not view him as able to return to work because it could not accept his limitations, the ALJ found that there were other light-work jobs in the economy that Plaintiff could perform notwithstanding his limitations, including Gate Guard, Counter Clerk, and Investigator-Dealer Accounts.  (R. 19.)

Thus, the ALJ held that Plaintiff had not been disabled, as defined by the Act, from March 17, 2017 through January 30, 2019.  (R. 20.)  Plaintiff appealed that determination to the Appeals Council.  The Appeals Council denied Plaintiff's appeal on April 25, 2019.  (R. 1.)  The instant case followed.

## Discussion

### A.  The Applicable Law

#### I.    Judicial Standard of Review of the Commissioner's Determination

A court's review of a Social Security disability determination requires two distinct inquiries.  *See Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987); *Dwyer v. Astrue*, 800 F. Supp. 2d 542, 546 (S.D.N.Y. 2011).  First, the court must determine whether the Commissioner applied the correct legal principles in reaching a decision.  42 U.S.C. § 405(g); *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019).  Second, the Court must decide whether the Commissioner's decision is supported by substantial evidence in the record.  *Id.*  Moreover, if the Commissioner's decision is supported by substantial evidence, the ALJ's findings as to any facts are conclusive.  42 U.S.C. §§ 405(g) & 1383(c)(3).

An ALJ's failure to apply the correct legal standard constitutes reversible error if that failure may have affected the disposition of the case.  *See Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008).  This applies to an ALJ's failure to follow an applicable statute, regulation, or Social Security Ruling ("SSR").  *See, e.g.*, *id.* at 266-67 (failure to follow a regulation); *Schaal v. Callahan*, 993 F. Supp. 85, 93 (D. Conn. 1997) (failure to follow SSR).  In such a case, the court may remand the matter to the Commissioner under sentence four of 42 U.S.C. § 405(g), especially if the Court finds remand necessary to allow the ALJ to develop a full and fair record or to explain his reasoning.  *See, e.g.*, *Donnelly v. Colvin,* No. 13-cv-7244 (AJN) (RLE), 2015 WL 1499227, at *8 (S.D.N.Y. Mar. 31, 2015).

If the reviewing court is satisfied that the ALJ applied the correct legal standards, it must "conduct a plenary review of the administrative record to determine if there is substantial evidence, considering the record as a whole, to support the Commissioner's decision."  *Brault v. Soc. Sec. Admin., Comm'r*, 683 F.3d 443, 447 (2d Cir. 2012) (per curiam) (citation and internal quotation marks omitted).  The threshold is not high.  *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154

7

(2019).  The Supreme Court has clarified that the substantial evidence standard requires "sufficient evidence to support the agency's factual determination . . . as a reasonable mind might accept as adequate to support a conclusion."  *Id.* (citations and internal quotation marks omitted).

To be supported by substantial evidence, the ALJ's decision must be based on consideration of "all evidence available in [the Plaintiff's] case record."  42 U.S.C. § 423(d)(5)(B).  The Act requires the ALJ to set forth a "discussion of the evidence" and the "reasons upon which [the determination] is based."  42 U.S.C. § 405(b)(1).  Although the ALJ's decision need not "mention[] every item of testimony presented," *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983) (per curiam), or "reconcile explicitly every conflicting shred of medical testimony," *Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) (internal quotation marks omitted), the ALJ may not ignore or mischaracterize evidence of a person's alleged disability.  *See Ericksson v. Comm'r of Soc. Sec.*, 557 F.3d 79, 82-84 (2d Cir. 2009) (mischaracterizing evidence); *Kohler*, 546 F.3d at 268-69 (overlooking and mischaracterizing evidence).

If the decision denying benefits under the Act applies the correct legal standards and is based on substantial evidence, the reviewing court must affirm; otherwise, the court may modify or reverse the decision, with or without remand.  42 U.S.C. §§ 405(g) & 1383(c)(3).

## II.   Legal Principles Applicable to the Commissioner's Disability Determination

Under the Act, every individual considered to have a "disability" is entitled to benefits. 42 U.S.C. §§ 423 & 1382.  The Act defines "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less

than twelve months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A).  A claimant's impairments

must be "of such severity that he is not only unable to do his previous work but cannot,

considering his age, education, and work experience, engage in any other kind of substantial

gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A) & 1382c(a)(3)(B).

To determine whether an individual is entitled to receive disability benefits under the

Act, the Commissioner is required to conduct the following sequential five-step inquiry:

(1) Determine whether the claimant is currently engaged in any substantial gainful activity.  20 C.F.R. § 404.1520(a)(4)(i).

(2) If not gainfully employed, determine whether the claimant has a "severe impairment" that significantly limits his or her ability to perform basic work activities. 20 C.F.R. § 404.1520(a)(4)(ii). Under the applicable regulations, an impairment or combination of impairments that significantly limits the claimant's ability to perform basic work activities is considered "severe." 20 C.F.R. § 404.1520(c).

(3) If the claimant has a "severe impairment," determine whether the impairment is one of those in the Listings – if it is, the Commissioner will presume the claimant to be disabled.  20 C.F.R. § 404.1520(a)(4)(iii).  The Commissioner must also determine the claimant's ability to perform physical and mental work activities on a sustained basis despite his impairments, known as the claimant's the RFC.[2]  20 C.F.R. § 404.1520(a)(4)(iv).

(4) If the claimant does not meet the criteria set forth in the Listings, the Commissioner next must determine whether the claimant possesses the requisite RFC to perform past relevant work.  *Id.*

---

[2] A claimant's RFC is "the most [he] can still do despite [his] limitations."  20 C.F.R. § 404.1545(a)(1).  The ALJ's assessment of a claimant's residual functional capacity must be based on all relevant medical and other evidence, including objective medical evidence, such as X-rays and MRIs, the opinions of treating and consultative physicians, and statements by the claimant and others concerning the claimant's impairments, symptoms, physical limitations, and difficulty performing daily activities.  *See Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010).

9

> (5) If the claimant is not capable of performing past relevant work, the Commissioner must determine whether the claimant can perform other substantial gainful work which exists in the national economy.

20 C.F.R. § 404.1520(a)(4)(v); 42 U.S.C. § 1382c(a)(3)(B); *see also Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999); *Gonzalez v. Apfel*, 61 F. Supp. 2d 24, 29 (S.D.N.Y. 1999).

The claimant bears the burden of proof at the first four steps of the Commissioner's analysis.  *See Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013); *Gonzalez*, 61 F. Supp. 2d at 29. At the last step, the Commissioner has the burden to show that there is other gainful work in the national economy that the claimant could perform despite his limitations.  *Balsamo v. Chater*, 142 F.3d 75, 80 (2d Cir. 1998); *see Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009).

In *Burgess v. Astrue*, the Second Circuit set forth the factors an ALJ is obligated to evaluate when determining whether to give a treating physician's opinion controlling weight in accordance with the so-called "treating physician rule."  537 F.3d 117 (2d Cir. 2008).  These factors include:  "[1] the [l]ength of the treatment relationship and the frequency of examination; [2] the [n]ature and extent of the treatment relationship; [3] the relevant evidence . . . , particularly medical signs and laboratory findings, supporting the opinion; [4] the consistency of the opinion with the record as a whole; and [5] whether the physician is a specialist in the area covering the particular medical issues."  *Id.* at 129 (citing 20 C.F.R. § 404.1527(d)(2)(i)-(ii), (3)-(5)) (internal quotation marks omitted)*; see also Estrella*, 925 F.3d at 94.  Under *Burgess*, if these factors are not explicitly applied and discussed by the ALJ, remand is appropriate unless the ALJ has elsewhere in the opinion provided "good reason" for the weight given to the treating physician, or, a "searching review of the record" by a reviewing

court satisfies the court that the "substance of the treating physician rule was not traversed."

*Estrella*, 925 F.3d at 96.

**B.  Analysis**

    **I.  Development of the Record**

This Court begins with the ALJ's affirmative duty to develop the record, which is a

threshold issue.  In Social Security proceedings, the ALJ must affirmatively develop the record

on behalf of the claimant, including those represented by counsel.  *See Moran v. Astrue*, 569

F.3d 108, 112-13 (2d Cir. 2009); *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996).  As part of this

duty, the ALJ must investigate the facts and develop the arguments both for and against

granting benefits.  *Moran*, 569 F.3d at 108, 112.  Additionally, the applicable regulations require

the ALJ to develop a claimant's complete medical history.  *Pratts v. Chater*, 94 F.3d 34, 34,

37(2d Cir. 1996) (citing 20 C.F.R. §§ 404.1512(d)-(f)).  In other words, before reviewing whether

the Commissioner's final decision is supported by substantial evidence under 42. U.S.C § 405(g),

"the court must first be satisfied that the ALJ provided plaintiff with a full hearing under the

Secretary's regulations and also fully and completely developed the administrative record."

*Scott v. Astrue*, No. 9-cv-3999 (KAM), 2010 WL 2736879, at *12 (E.D.N.Y. July 9, 2010) (internal

quotations and citations omitted).  After review, this Court is satisfied that the ALJ provided

Plaintiff with a full hearing and also fully and properly developed the administrative record as

required by 20 C.F.R. § 404.1512(b).

    **II.  Substantial Evidence Analysis**

11

Plaintiff argues that the ALJ failed to adequately assess the opinion evidence in the record, which resulted in an erroneous decision. (*See* J.S. 11.) Plaintiff raises three separate arguments in support of this position. Each argument is discussed, in turn, below.

### 1.   Plaintiff's Residual Functional Capacity

First, Plaintiff asserts that that the ALJ improperly credited the opinion of Dr. Auerbach, a non-examining State agency medical consultant, over the opinion of Dr. Healy, a consultative examiner, in determining Plaintiff's RFC. (J.S. 15.) That error alone, Plaintiff argues, warrants remand of the proceedings back to the Commissioner. The Commissioner maintains that the ALJ properly credited Dr. Auerbach's medical opinion because it was consistent with the objective facts demonstrated in the record. (J.S. 22.) In any event, the Commissioner asserts that the physical limitations attributed by Dr. Healy to the Plaintiff, even if credited by the ALJ, were consistent with the ALJ's RFC for light work. (J.S. 20, 22.) Thus, the Commissioner contends that the ALJ's credibility determination, even if erroneous, would constitute harmless error. (J.S. 22-23.)

Courts in this District have clarified that the opinions of non-examining State agency medical consultants, like Dr. Auerbach, may constitute "substantial evidence" as long as those opinions are substantially supported by the record. *Pappas v. Saul*, 414 F. Supp. 3d 657, 674 (S.D.N.Y. 2019) (collecting cases). To be sure, more weight is typically afforded to the opinion of a doctor who has examined a claimant than to the opinion of another who has not. *Gardenier v. Comm. of Soc. Sec.*, No. 16-cv-0073 (WBC), 2017 WL 2389680, at *5 (N.D.N.Y. June 1, 2017); 20 C.F.R. § 404.1527(c)(1). However, this is not always the case. Indeed, the Second Circuit has held that the opinion of a non-examining State agency medical consultant may

outweigh the opinion of a treating source when the treating physician's opinion runs contrary to the evidence.  *See Camille v. Colvin*, 652 Fed. Appx. 25, 28 (2d Cir. 2016) (summary order) (citing *Diaz v. Shalala*, 59 F.3d 307, 313 n.5 (2d Cir. 1995).  Moreover, in conducting his/her analysis "[a]n ALJ need not recite every piece of evidence that contributed to the decision, so long as the record 'permits us to glean the rationale of an ALJ's decision.'"  *Cichocki v. Astrue*, 729 F.3d 172, 178 n.3 (2d Cir. 2013) (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983)).

Here, Dr. Healy concluded that the Plaintiff has moderate limitations with standing, walking, climbing stairs, bending, lifting, and reaching and carrying objects with his left shoulder.  (R. 326.)  The ALJ determined that Dr. Healy's opinion was not persuasive as it was not consistent with the other medical records in evidence or Plaintiff's testimony regarding his daily activities.  (R. 18.)  While the ALJ certainly did not thoroughly analyze Dr. Healy's opinion under the *Burgess* factors referenced above, a simple review of the record indicates that Dr. Healy based his findings, in part, on his understanding of Plaintiff's daily activities.  Specifically, Dr. Healy cites to Plaintiff's difficulty cooking, cleaning, laundering, and shopping due to back pain.  (R. 325.)  As the ALJ noted, however, some of the facts on which Dr. Healy relied contradict Plaintiff's own testimony about what he could do.  Plaintiff testified at hearing that, every day, he cooks all the meals for his three daughters, tends to the chores around the house, and uses a light vacuum, all with only occasional breaks.  (R. 36-38.)  Further, Plaintiff did not testify to any difficulties with shopping.[3]  While Plaintiff did testify that he sometimes has

---

[3] Indeed, in June of 2018 Plaintiff confirmed with the New York State Office of Temporary and Disability Assistance that he is capable of shopping in stores once or twice a week for an hour.  (R. 183.)

trouble judging distance while unloading the dishwasher due to his shoulder impairment, the

ALJ nevertheless correctly observed that Plaintiff's own statements regarding his daily living

represent activity beyond that which was contemplated and assessed by Dr. Healy.  (R. 18.)

Plaintiff also indicated he could lift his 35-pound daughter, drive his daughters to and from

school every day, participate in social clubs, attend church weekly, walk for a mile without

interruption, and bathe and dress himself.  (R. 34, 36, 56, 184, 325.)  This reasonably supports

the ALJ's conclusion that Dr. Healy's medical opinion was less reliable given its inconsistency

with the record evidence.  Further, and in any event, Dr. Healy opined that Plaintiff had only

moderate limitations in some respects, a finding that does not necessarily preclude light work

with restrictions, particularly in light of the fact that Plaintiff's other doctors indicated he could

return to work with restrictions.  (R. 292, 372-74, 388.)  In sum, a review of the record finds that

the treating physician rule was not traversed.  *Estrella*, 925 F.3d at 96.

Dr. Auerbach, the non-examining State agency medical consultant, determined that

Plaintiff was limited to light exertion with occasional postural limitations and limited to

occasional overhead reaching with the left shoulder due to Plaintiff's prior shoulder surgery.

(R. 54-56.)  The ALJ credited this opinion because it was consistent with the treatment notes

from Plaintiff's orthopedic surgeon, Dr. Reish, and records from Claimant's post-operative

physical therapy.  (R. 17.)  Upon examination, Dr. Reish's treatment notes indicate that

Plaintiff's range of motion and strength in his left shoulder progressively improved following

surgery.  (R. 242-46.)  Specifically, from November 2017 to April 2018 Dr. Reish's notes reflect

that Plaintiff improved his active forward elevation capacity with his left shoulder from 90

degrees to 140 degrees with "good strength."  (R. 242-46.)  Dr. Reish's notes also indicate that,

14

by May 2018, Plaintiff was experiencing "no pain" in his left shoulder.  (R. 247.)  Further, the

physical therapy notes indicate that, over the course of approximately four and a half months

of post-operative physical therapy, Plaintiff demonstrated slow but steady progress.  (R. 416,

525.)  The physical therapy notes also confirm that, due to Plaintiff's progress, he could

perform household chores, lift his left arm above shoulder-level and could lift, push, and carry

up to 50 pounds with his arms.  (R. 525.)  Thus, the Court finds that Dr. Auerbach's RFC

assessment is consistent with the objective evidence of record.  Moreover, although the ALJ

failed to meaningfully analyze Dr. Auerbach's medical opinion under the *Burgess* factors, the

analysis above demonstrates that there are good reasons to substantiate the ALJ's decision to

credit that opinion and that the treating physician rule was not traversed.

As such, the ALJ did not baselessly discount Dr. Healy's opinion.  The ALJ simply

contemplated the totality of the record evidence and determined that Dr. Auerbach's

characterization of Plaintiff's RFC was more reliable than Dr. Healy's.  The ALJ therefore

concluded that Plaintiff has the residual functional capacity to, among other things, perform

light work and occasionally reach overhead with his left shoulder.  (R. 13-14.)

Plaintiff relies on *Martin v. Colvin*, No. 13-cv-2827 (VSB) (RLE), 2014 WL 4467709

(S.D.N.Y. Sept. 10, 2014) in support of his argument that the ALJ improperly disregarded Dr.

Healy's opinion.  (J.S. 27.)  However, *Martin* is inapposite.  There, the Court criticized the ALJ for

supplanting her own view of the medical evidence for that of the plaintiff's treating physicians.

*Id.* at *13-14.  Specifically, the ALJ had interpreted evidence stating that the plaintiff was "alert

and in no acute distress" to mean that the plaintiff was not in chronic pain, despite substantial

medical opinions and conclusions to the contrary.  *Id.* at *14.  Additionally, the ALJ in *Martin*

15

found that the claimant could sit for six hours and walk for two hours in a workday despite contrary opinions from the plaintiff's treating physician. *Id*. The Court found that this analysis was patently improper.

Quite differently, the ALJ here found one medical opinion to be more persuasive than another for the reasons stated above. The ALJ did not disregard contradictory medical evidence without explanation. To the contrary, the ALJ cited various specific reasons for his credibility determination (the inconsistency between some of the facts underlying Dr. Healy's opinion and Plaintiff's testimony as well as the consistency of Dr. Auerbach's opinion with the treatment notes from Dr. Reish and Plaintiff's physical therapy). Additionally, the ALJ's conclusion in this context pertained to Plaintiff's RFC, a determination specifically reserved for the ALJ. In *Martin*, however, the ALJ made conclusions with respect to whether Plaintiff was in pain, a matter more suitable for resolution by a treating physician. *See id.* at *14

Plaintiff also stresses that the ALJ's reliance on Dr. Auerbach's report is misplaced since that report, according to Plaintiff, inherently relies on the accuracy of Dr. Healy's opinion. (J.S. 14.) To be sure, Dr. Auerbach's report does state that Dr. Healy's medical opinion is supportable and generally consistent with the information contained in Plaintiff's file. (R. 54.) However, although the ALJ clearly felt Dr. Auerbach's RFC determination to be more reliable, that determination does not necessarily imply that Dr. Healy came to a wholly different conclusion, as Plaintiff suggests.

At first glance, the moderate limitations ascribed to Plaintiff by Dr. Healy do not preclude performance of light work. Indeed, the case law supports this proposition. Courts in this Circuit have held that many of the moderate limitations cited by Dr. Healy are consistent

with Dr. Auerbach's conclusion that Plaintiff can perform light work.  *See Lewis v. Colvin*, 548 F.

Appx. 675,  (2d Cir. 2013) (summary order) (finding ALJ's determination that claimant could

perform "light work" properly supported by the doctor's assessment of "mild limitations for

prolonged sitting, standing, and walking," and direction that claimant should avoid "heavy

lifting, and carrying"); *Vargas v. Astrue*, No. 10-cv-6306 (PKC), 2011 WL 2946371, at *12

(S.D.N.Y. July 20, 2011) (holding moderate limitations for lifting, carrying, and handling objects

as well as climbing stairs consistent with a conclusion that the claimant could perform light

work); *see also Nelson v. Colvin*, No. 12-cv-1810 (JS), 2014 WL 1342964, at *12 (E.D.N.Y. Mar.

31, 2014) (holding ALJ determination that Plaintiff could perform "light work" to be supported

by a physician's assessment of "mild to moderate limitation for sitting, standing, walking,

bending, and lifting weight on a continued basis").

Plaintiff acknowledges that the moderate limitations *could* be consistent with light work

in certain circumstances.  (J.S. 26.)  However, Plaintiff argues that the moderate limitations in

this case preclude light work, relying on *Arzu v. Colvin*, No. 14-cv-2260 (JCF), 2015 WL 1475136

(S.D.N.Y. Apr. 1, 2015).  In *Arzu*, the Court found that the ALJ improperly rejected a treating

physician's opinion that the plaintiff could only walk for 20 minutes based on that same

physician's opinion that the plaintiff had the capacity to shop and use public transportation.  *Id.*

at *12.  Since these two activities were not mutually exclusive, the Court held that this rationale

did not constitute "substantial evidence" to support rejecting the medical opinion at issue

because the ALJ failed to seek clarification for the evidentiary contradiction.  *Id.*

However, the ALJ in this case committed no such error.  At no point in his decision did

the ALJ discredit a medical opinion based on allegedly contradictory statements or conclusions

17

*in that same opinion*.  As described above, the ALJ merely weighed conflicting medical opinions against the record evidence and found Dr. Auerbach's to be more supported than Dr. Healy's. More importantly, however, the ALJ here does not – as the ALJ did in *Arzu* – purport to shortchange Plaintiff's physical limitations based on conflicting medical evidence.  Dr. Healy, on one hand, opined that Plaintiff was moderately limited in standing, walking, climbing stairs, bending, and lifting, as well as moderately limited in reaching, handling, and carrying objects with the *left* shoulder.  Dr. Auerbach, on the other, opined that Plaintiff was limited to light exertion with occasional postural limitations, limited to occasional overhead reaching with the *left* shoulder, and unlimited with respect to his *right* shoulder.  The case law referenced above clarifies that these "moderate limitations" cited by Dr. Healy and the "light exertion" or light work referenced by Dr. Auerbach are mostly, if not entirely, consistent.  As such, the ALJ did not meaningfully disregard limitations ascribed to Plaintiff by Dr. Healy in rendering his RFC determination.  Thus, *Arzu* is not instructive.

The applicable regulations warrant the same conclusion.  20 C.F.R. § 404.1567(b) provides that "light work" in the social security disability context means:

> "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities . . ."

Consistent with the record evidence discussed above, the ALJ reasonably interpreted the opinion evidence to determine that Plaintiff can perform light work.  Dr. Healy's opinion does not, as Plaintiff suggests, warrant a different result.

In the instant case the ALJ did not baselessly discount Dr. Healy's opinion. Indeed, this court finds, for the reasons stated above, that the ALJ's RFC determination is supported by substantial evidence in the record. There were adequate grounds to find that Plaintiff can perform light work.

2.      *Plaintiff's Ability to Perform Past Relevant Work*

Second, Plaintiff attacks the ALJ's Step Four determination that Plaintiff is capable of performing past relevant work as a detective. (R. 18.) Plaintiff argues that the ALJ improperly discredited the medical opinions of treating doctors to reach this allegedly erroneous conclusion. (J.S. 15-16.) The Commissioner responds with a collection of reasons to support the ALJ's credibility determinations. (J.S. 23-24.) Further, the Commissioner argues that since Plaintiff's RFC did not exceed the exertional demands of Plaintiff's prior job as a detective, Plaintiff is capable of returning to that work. (J.S. 25.) For the reasons stated below, the ALJ's finding in this regard is *not* supported by substantial evidence.

On this point, Plaintiff first references a statement made by Dr. Reish – Plaintiff's orthopedic surgeon – that Plaintiff "most likely will not be able to go back to work to perform the duties of his job." (R. 246). The ALJ chose to discount this statement because it was "rendered for a different government program with different" disability standards and also failed to assess Plaintiff's capacity to perform "other work." (R. 17-18.) Further, the ALJ credited the non-treating vocational expert's testimony that "a hypothetical individual with the claimant's age, education, work experience, and residual functional capacity would be able to perform the claimant's past work as such work is actually and generally performed." (R. 18.)

19

The ALJ rendered these credibility determinations without engaging in any meaningful analysis of the *Burgess* factors, as is required.

A review of the record indicates that Dr. Reish's opinion came approximately six months after the Plaintiff's left shoulder replacement surgery, in late April 2018. (R. 246.) This was Plaintiff's second to last visit with Doctor Reish over the course of a string of seven medical visits within a year. As discussed above, an ALJ's failure to address the *Burgess* factors requires remand of the case unless the ALJ provides some alternative "good reason" for discrediting the treating physician, or if a "searching review of the record" satisfies this Court that the "substance of the treating physician rule was not traversed." *Estrella*, 925 F.3d at 96. Here, the ALJ's decision does not meet this standard.

The ALJ's stated rationale does not come close to providing a good reason for discrediting Dr. Reish. The ALJ inaccurately states that Dr. Reish's medical opinion was formed pursuant to some unnamed government program, which employs different standards than the Social Security Administration. (R. 17-18.) The record, however, demonstrates that Dr. Reish was Plaintiff's private orthopedic surgeon who rendered medical treatment, opinions, and advice as Plaintiff's treating physician. (*See* R. 232-47.) Therefore, use of Dr. Reish's medical opinion by another government program is an insufficient reason to discredit that opinion. *See Perozzi v. Berryhill*, 287 F. Supp. 3d 471, 492 (S.D.N.Y. 2018); *Mercado v. Colvin*, No. 15-cv-2283 (JCF), 2016 WL 3866587, at *15 (S.D.N.Y. July 13, 2016) (a doctor's role in a claimant's workers' compensation case "is a legally insufficient reason to categorically disregard a treating physician's opinion"). Further, a searching review of the record indicates that, presumably, the ALJ's only other reason for discrediting Dr. Reish's assessment concerning Plaintiff's inability to

return to work is the testimony of the vocational expert.  (R. 18.)[4]  The ALJ fails to engage in any

meaningful comparative analysis with respect to these contrary medical opinions and endorses

the non-treating vocational expert's opinion without any of the requisite analysis under

*Burgess*.

Plaintiff also highlights the opinion of Dr. Fisher from Plaintiff's evaluation in the Office

of Medical Services of the Port Authority of New York and New Jersey, Plaintiff's former place

of work.  On April 3, 2018 – approximately five months after Plaintiff's shoulder surgery – Dr.

Fisher concluded that Plaintiff "is no longer medically able to perform the *full* duties of a Police

Detective." (R. 409) (emphasis added.)  The ALJ discounted this evaluation for the same

reasons he discounted Dr. Reish's statement; namely, because the statement was made for a

different government program with different disability standards and because the opinion

failed to assess Plaintiff's capacity to perform other work.  (R. 17.)

The ALJ did not discuss how the medical findings and test results of these doctors were

undermined by the findings of the vocational expert.  Nor did the ALJ discuss how the medical

findings of Plaintiff's treating physicians are consistent or inconsistent with Plaintiff's self-

reported physical limitations and daily functioning.  The ALJ failed to mention the various

specialties of these doctors and the frequency with which Plaintiff saw them.  As such, the ALJ

---

[4] The Commissioner posits that Plaintiff's progress throughout his visits with Dr. Reish suggests that the ALJ was correct to discount Dr. Reish's opinion with respect to Plaintiff's inability to perform prior relevant work.  The Court disagrees.  The trajectory of Plaintiff's improvement does not imply, neither as a matter of law or fact, that Plaintiff would be able to carry out the full duties of his previous job as a detective.  The Commissioner fails to cite any case law that suggests otherwise.  (J.S. 23.)

was ill-equipped to adequately analyze and discuss how these physicians' opinions bear on Plaintiff's capacity to perform past relevant work as a detective.[5]

The Commissioner argues that any such analytical deficiencies are cured by the Plaintiff's physical therapy notes.  (J.S. 24.)  The Commissioner again points out that the later physical therapy notes from September 2018 show Plaintiff with the ability to lift, push, or carry up to 50 pounds of weight.  (R. 491.)  The Commissioner asserts that this record evidence showing a drastic improvement in Plaintiff's physical capacity explains the ALJ's finding that Plaintiff can substantially perform his prior work as a detective.  However, neither the ALJ nor the Court can substitute its own judgment in the face of a competent medical opinion rendered by a treating doctor, especially absent an articulated, reasonable rationale for doing so.  *See Gavazzi v. Berryhill*, 687 F. Appx. 98, 100 (2d Cir. 2017) ("In analyzing a treating physician's report, 'the ALJ cannot arbitrarily substitute his own judgment for competent medical opinion.'") (quoting *Rosa*, 168 F.3d at 79 (2d Cir. 1999)).  The ALJ failed to engage in the necessary analysis and there is not substantial support in the record for his finding that Plaintiff is capable of performing past relevant work as a detective.

Importantly, however, that finding does not end the Court's inquiry as the ALJ made an alternative finding at Step Five of his analysis that, notwithstanding Plaintiff's capability to return to work, there are other jobs existing in the national economy that Plaintiff can perform. (R. 18.)

---

[5] The Court briefly notes that there is additional medical evidence in the record that suggests that Plaintiff would not be able to carry out all his prior functions as a detective, further compounding the ALJ's error.  (*See* R. 281, 292.)

22

Courts in this District have held that a detective or law enforcement officer who is deemed too disabled to return to his/her prior job can nevertheless perform other light work in the national economy.  *Swartz v. Comm'r of Soc. Sec.*, No. 13-cv-5963 (LGS) (JCF), 2015 WL 220983 (S.D.N.Y. Jan. 13, 2015), *report and recommendation adopted,* 2015 WL 220983 (upholding ALJ determination that plaintiff lacked residual functional capacity to perform prior work as a police officer or teacher, but could perform a wide range of light work in the national economy); *Rodriguez v. Astrue*, No. 7-cv-3309, 2008 WL 2073508 (S.D.N.Y. May 14, 2008) (affirming ALJ determination that plaintiff was unable to perform past work in law enforcement, but nonetheless had the residual functional capacity to perform light work); *see also Williams v. Comm'r of Soc. Sec.*, No. 7:7-cv-908, 2010 WL 2401280 (N.D.N.Y. June 10, 2010) (affirming ALJ finding that plaintiff was unable to perform past work as a police officer or truck driver, but was capable of performing light work limited by the need to occasionally alternate between sitting and standing).

In the instant case Plaintiff admits that he can lift his 35-pound daughter (R. 34), cook and perform light cleaning (R. 36-37), care for his three children (R. 36-37), read (R. 37), attend to household chores (R. 37), and walk a mile (R. 56, 324.)  Further, Plaintiff is right-handed, whereas his shoulder injury is on his left side.  (R. 35.)  Plaintiff also confirmed at hearing that he believes he has already regained 65 percent use of his impaired shoulder.  (R. 36.)  The vocational expert testified that Plaintiff's prior work as a detective entailed administrative, critical thinking, and communication skills that would be transferrable to other occupations.  (R. 43.)  The vocational expert also testified that Plaintiff could perform the jobs of Gate Guard, Counter Clerk, or Investigator-Dealer Accounts (R. 44.)  Further, all three of the independent

23

medical examiners who assessed plaintiff in connection with his application for workers'
compensation coverage opined that Plaintiff could return to work if afforded the proper
accommodations.  (R. 292, 372-74, 388.)[6]

Given the above, this Court finds that the ALJ's decision to credit the vocational expert's
testimony and find plaintiff capable of performing other light work in the national economy to
be supported by substantial evidence.

### 3.    *Vocational Guidelines*

Plaintiff's final argument with respect to whether the ALJ's decision is supported by
substantial evidence concerns the ALJ's obligation to consider Plaintiff's borderline age under
the applicable SSRs.  Pursuant to HALLEX I-2-2-42, the Commissioner uses age categories to
assess whether a given claimant's impairments qualify as a disability under the Act.  "If a
claimant is within . . . a few months of reaching an older age category . . . and using the higher
age category would result in a determination of decision that the claimant is disabled," the
Commissioner will consider using the higher age category based on the totality of the
circumstances.  HALLEX I-2-2-42.  Plaintiff asserts that the ALJ failed to do so, which
necessitates remand for further proceedings. (J.S. 17.)

However, the ALJ noted that Plaintiff "changed age categories to closely approaching
advanced age (20 CFR 404.1563)."  (R. 19.)  Moreover, while the vocational expert testified that
a hypothetical individual who changed age categories to advanced age could not perform
sedentary work, the ALJ found that Plaintiff was not limited to sedentary work and was capable

---

[6] These independent examinations are not dispositive of the inquiry in any respect.  They merely serve as
additional medical evidence that Plaintiff is capable of performing light work in some capacity.

of light work.  In other words, the ALJ found that Plaintiff would not be confined to a chair at work.  Therefore, the ALJ considered Plaintiff's age category and appropriately determined that the older category would not change the outcome of the case.

### III.    Plaintiff's Subjective Complaints

In order to determine whether a claimant is disabled, an ALJ must consider subjective evidence of pain or disability drawn out in the claimant's testimony.  20 C.F.R. § 404.1529(a).  However, "[s]tatements about a claimant's pain cannot alone establish disability; there must be medical evidence that shows that the claimant has a medically determinable impairment that could reasonably be expected to produce the pain or other symptoms alleged." *Davis v. Massanari,* No. 00-cv-4330, 2001 WL 1524495, at *6 (S.D.N.Y. Nov. 29, 2001).

Plaintiff alleges that the ALJ inappropriately relied on Plaintiff's capacity to perform daily activities in his determination.  (J.S. 31.)  However, given the extensive discussion above concerning the medical opinion evidence of record, as well as the ALJ's assessment of that evidence in his decision (R. 15-18), this Court finds that the ALJ properly considered Plaintiff's subjective complaints related to pain and physical limitations.  20 C.F.R. § 404.1529(a).  Moreover, as the Commissioner correctly points out, daily activities such as childcare and housework can weigh against a plaintiff's characterization of his limitations.  *See Poupore*, 566 F.3d at 307.  As the Court alluded to above, Plaintiff's subjective complaints were quite limited.  Plaintiff confirmed that he can lift his 35-pound daughter (R. 34), cook and perform light cleaning (R. 36-37), care for his three children (R. 36-37), read (R. 37), attend to household chores (R. 37), and walk a mile (R. 56, 324.)  Therefore, substantial evidence supports the ALJ's

conclusion that Plaintiff's subjective complaints were insufficient to establish disability under the Act.

## CONCLUSION

For the reasons stated above, the Commissioner's motion is GRANTED and Plaintiff's motion is DENIED (ECF No. 12).  The clerk of Court is respectfully directed to close this case.


**SO ORDERED.**


Dated: August 31, 2020
      New York, New York

KATHARINE H. PARKER
United States Magistrate Judge